UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:11-cv-542-RJC-DSC

| BRIAN L. TRUDELL, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| TOMMY W. ALLEN, JR., Sheriff of Anson County, North Carolina; and THE OHIO INSURANCE COMPANY, Surety on Official Bond, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**THIS MATTER** comes before the Court on Defendants Tommy W. Allen and The Ohio Insurance Company's (Joint) Motion for Summary Judgment, (Doc. No. 17) and Memorandum in Support of Summary Judgment (Doc. No. 18), Plaintiff's Response in Opposition, (Doc. No. 21), and Defendants' Response in Support of the Motion, (Doc. No. 24).

**I.      BACKGROUND**

From May 1999 until his termination on August 23, 2010,  Plaintiff Brian Trudell served as Deputy Sheriff for the Anson County Sheriff's Department, first in a reserve capacity and then full time after December 2008.  (Doc. No. 10 at 2).  Mr. Trudell claims that Defendant Tommy Allen, Jr. terminated his employment in contravention of the Americans With Disabilities Act ("ADA") and wrongfully discharged him in violation of North Carolina State Law.  (Id. at 3-5).  Plaintiff, who suffers from kidney failure and diabetes, contends that Defendant Sheriff Allen fired him after learning about such disabilities.  Mr. Allen, in contrast, maintains that Plaintiff's medical conditions played no role in the decision to terminate him, but that the termination resulted from Plaintiff's attempts to contact his estranged wife after

Defendant ordered him not to.

An approximate time line of relevant events is instructive:[1]

- July 18, 2010: Plaintiff, having learned that he has a kidney condition, informs his supervisor, Sergeant Chris Walker that he will need dialysis. (Doc. No. 17-2 at 32).

- July 19, 2010: Plaintiff informs Sheriff Allen and Captain Charlie Little of his medical condition, noting that his kidneys were failing and that he was going to have to go on dialysis. (Id. at 32, 34; Doc No. 21-1 at 18). According to Plaintiff, Sheriff Allen told him that "there's going to come a time that I'm going to have to make a decision over whether [you] could still work or not." (Doc. No. 17-2 at 33).

- August 18, 2010: Plaintiff has altercation with his wife and son resulting in wife and son moving to a separate apartment, leased solely by wife, Mrs. Shelly Trudell, in Monroe, NC. (Doc. No 17-2 at 8).

- August 20, 2010: Plaintiff has telephone conversation with his wife, requests that she return home with their son. Plaintiff's wife declines. (Id. at 8).

- August 20, 2010: Plaintiff tells Captain Charlie Little of the Anson Country Sheriff's Department about his domestic situation and that his wife "had walked out with my kid." (Id. at 11).

- August 21, 2010: Plaintiff is served with an arrest warrant by the Union County Sheriff's Department. (Id. at 13). The offense charged in the warrant includes communicating

---

[1] Unless otherwise noted, these facts are drawn from the Complaint and the evidentiary material of record. Because Allen is seeking summary judgment, all factual disputes have been resolved in favor of Trudell, as the party resisting summary judgment. When ruling on a summary judgment motion, the Court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

threats to his wife that he would wait for her outside her work and "put a bullet in [her] head." (Doc. No. 17-7 at 2).

- August 21, 2010: Plaintiff speaks with Sheriff Allen who informs Plaintiff that he has been suspended with pay and tells him "something to the effect of 'you just need to stay away from her.'" (Doc. No. 17-2 at 15-16).

- August 22, 2010: Plaintiff is released from jail. (Id. at 16).

- August 23, 2010 (8:40 a.m): Plaintiff drives to his wife's apartment to pick up his son for the purpose of traveling to work on a roofing project together. (Id. at 18-19); (Doc. 17-4 at 8). Plaintiff knocks on wife's door for approximately three to five minutes. (Doc. No. 17-2 at 20). Plaintiff leaves apartment and is stopped by police who question him about violation of a potential protective order. (Id. at 21). Police do not arrest Plaintiff. (Id.). Plaintiff returns home where he receives a message from his doctor "about putting in a port for [his] dialysis." (Id. at 24). Plaintiff attempts to call his wife but is unable to reach her. (Id. at 30).

- August 23, 2010 (9:55 a.m.): Plaintiff calls wife's boss and leaves a message instructing him to "tell that bitch to call me." (Id. at 28; Doc. No. 17-4 at 8). Plaintiff also receives a phone call from Captain Charlie Little requesting that he come to the Anson County Sheriff's Department to write a statement about his encounter with law enforcement that morning. (Doc. No. 17-2 at 28). Captain Little calls again and informs Plaintiff that Union County Sheriff's Department had a protective order against Plaintiff. (Id.).

- August 23, 2010 (12:00 p.m.): Plaintiff picks up protective order from Union County Sheriff's Department. (Id. at 25). Plaintiff travels to Anson County Sheriff's Department and provides statement to Captain Little. (Id. at 27). Plaintiff meets with

3

Sheriff Allen who informs Plaintiff that his employment has been terminated but does not offer an explanation. (Id.). Plaintiff notes that at the close of the conversation, Sheriff Allen, referring to Plaintiff's pending surgery notes: "[W]ell, you better have them hurry up." (Id.).

- September 7, 2010: Union County District Court finds that Mrs. Trudell failed to prove grounds for issuance of domestic violence protective order and dismisses all legal actions against Plaintiff Trudell as related to the domestic disturbance. (Doc. No. 21 at 13-16).

- June 24, 2011: the U.S. Equal Employment Opportunity Commission issues and mails a "Dismissal and Notice of Rights" letter informing Plaintiff of his right to sue within ninety (90) days. (Doc. No. 1-3 at 4).

- September 22, 2011: Plaintiff files suit in North Carolina State Court.

- October 27, 2011: Defendant files Notice of Removal.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S.

4

317, 323 (1986) (internal citations omitted). "The burden on the moving party may be discharged by 'showing' ... an absence of evidence to support the moving party's case." Id. at 325.

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (internal citations omitted).

## III. ANALYSIS

### A. ADA Framework

The Fourth Circuit applies the McDonnell Douglas three-part burden shifting framework to ADA claims where the defendant (employer) claims legitimate grounds for adverse actions such as discharge. See Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 57-58 (4th Cir. 1995). Under this framework, the plaintiff must prove a prima facie case of discrimination. See id. at 58. If the plaintiff is successful, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for taking adverse action. See id. If the defendant meets

this burden, the plaintiff must then demonstrate that defendant's stated reason is merely a pretext for discrimination.

      B.      <u>Plaintiff's Prima Facie Case</u>

In order to make a prima facie showing of discrimination, Mr. Trudell, as Plaintiff, must demonstrate that: (1) he is within the ADA's protected class; (2) he was discharged; (3) at the time of the discharge, he was performing his job at a level that met his employer's legitimate expectations; and (4) the adverse employment action occurred under circumstances giving rise to a reasonable inference of unlawful discrimination. <u>Ennis</u>, 53 F.3d 55, 58 (citing <u>Texas Dept. of Community Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981)).

As the non-moving party, the Court interprets all evidence and draws all inferences in the light most favorable to the Plaintiff. The Defendants do not contest Plaintiff's claim that he falls within the ADA's protected class or that he was discharged. Accordingly, the Court places its focus on evidence related to Plaintiff's job performance and the circumstances of his discharge. Read most favorably to Plaintiff, the facts here establish that Plaintiff's on the job performance was satisfactory. Deputy Trudell's supervisor, Sergeant Chris Walker, noted that Plaintiff "was a good deputy, always did as I asked, and was a capable deputy. At the time he was fired in August 2010, although ill, he was able to perform his duties as a deputy sheriff and he was doing so. At the time Deputy Trudell was fired, he was otherwise qualified for his duties as deputy sheriff." (Doc. No. 21-1, Walker Affidavit @ ¶ 5). Additionally, Deputy Trudell never received a written warning or reprimand during his time as a reserve or full time deputy. (Doc. No. 21-1, Trudell Affidavit @ ¶ 5). Finally, the close temporal nexus between the disclosure of the disability to Mr. Trudell's employer and his termination raises at least the reasonable inference of a connection between the disability and plaintiff's termination. Thus, Plaintiff has proven a

prima facie case of discrimination; the burden then shifts to defendant to provide a legitimate, non-discriminatory reason for the termination of the Plaintiff.

  C. <u>Whether Defendant Has Demonstrated A Legitimate, Non-Discriminatory Reason For Terminating Plaintiff</u>

At the time of his termination, Plaintiff was in a suspended with pay status as a result of his arrest. He had been informed of the suspension by Defendant after being served with a warrant in which Plaintiff was alleged to have threatened to kill his wife. Defendant instructed Plaintiff that he was "on suspension ... until you get through this." (Doc. No. 17-2 at 15). Significantly, Plaintiff neither disputes the suspension nor argues that it was the result of a discriminatory motive by Defendant. Plaintiff's first actions following his release from jail were in direct violation of his employer's order to avoid contact with his wife. The close temporal proximity between the warning, suspension and termination indicate strongly that Plaintiff's dispute with his wife and failure to heed Defendant's warnings served as the primary reason for his termination. On Saturday August 21, Plaintiff was arrested and informed by Defendant not to have any contact with his wife. On Monday August 23, Defendant learned that Plaintiff had been stopped by police after visiting his wife's apartment. Shortly thereafter the Defendant learned that Plaintiff had called his wife's boss and requested of him "to tell that bitch to call me." (Doc. No. 17-2 at 28). Defendant met with Plaintiff and informed him of his termination. These facts, even when taken in the light most favorable to Plaintiff are sufficient to establish the close connection between the termination and the fallout from his troubles with his wife.

    1. Special Relationship Between Sheriff and Deputy

The North Carolina Legislature has made sheriff's deputies at-will employees who "shall serve at the pleasure of the appointing officer." N.C. G<small>EN</small>. S<small>TAT</small>. § 153A-103(2).

Defendant argues correctly that it is "[b]ecause of the special relationship of trust and confidence between sheriff and deputy, and because a sheriff is ultimately responsible for the acts of his deputies, sheriffs are afforded broad authority to terminate the employment of a deputy on any lawful basis." (Doc. No. 24 at 5). Additionally, this Court finds it immaterial to the instant dispute that Plaintiff was later acquitted on the charges related to his wife. The sheriff has a legitimate expectation that his deputies avoid all incidents, including arrests, which could negatively effect the confidence of the public in its law enforcement officials. It can be reasonably inferred that the order for Plaintiff to avoid contact with his wife was issued to prevent any situation that might reflect negatively on the Sheriff's Department, even if the deputy involved is later found to be not guilty. Accordingly, this Court agrees with the North Carolina Court of Appeals about the nature of the relationship between a sheriff and a deputy:

> The deputy is a representative of the sheriff in his official capacity...The public generally regards the acts of a deputy sheriff as the acts of the sheriff himself. The sheriff's position in government vests in him and his deputies 'substantial responsibility for or control over the conduct of governmental affairs. This is certainly true where law enforcement and police functions are concerned ...[I]f the deputy's office [is] abused, it has great potential for social harm and thus invites independent interest in the qualifications and performance of the person or persons who hold the position.

Cline v. Brown, 210 S.E.2d 446, 449 (N.C. Ct. App. 1974).

Here, it is not a strain to infer that a sheriff might react negatively to the arrest of one of his deputies or that such an arrest might lead to adverse consequences. In light of such facts, the Defendant has demonstrated legitimate, non-discriminatory grounds for the decision to terminate Plaintiff's employment.

    D.    <u>Whether Defendant's Legitimate, Non-Discriminatory Reasons Are Pretextual</u>

Plaintiff now carries the burden of establishing that Defendant's explanation is merely a

pre-text for discrimination. See Rowe v. Marley Co., 233 F.3d 825, 829 (4th Cir. 2000). Pretext "means a lie, specifically a phony reason for some action," Kothe v. Continental Teves, Inc., 461 F.Supp. 2d 474 (W.D.Va. 2006) (quoting O'Neal v. City of New Albany, 293 F.3d 998, 1005 (7th Cir. 2002)). Plaintiff can demonstrate that Defendant's reasons are "pretextual" by offering "other forms of circumstantial evidence sufficiently probative of intentional discrimination." Dugan v. Albemarle Cnty Sch. Bd., 293 F.3d 716, 721 (4th Cir. 2002).

To show pretext, a plaintiff need not produce any additional evidence of discrimination distinct from the evidence supporting the prima facie case, so long as that evidence is sufficient. See Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 148-49 (2000). In order to survive summary judgment, Plaintiff must do more than present conclusory allegations of discrimination. Kothe, 461 F.Supp at 475.

Here, Plaintiff has not offered sufficient evidence to establish that Defendant's stated grounds for termination were merely pretextual. Significantly, Plaintiff puts forth the argument that Defendant's order to avoid contact with his wife was not an enforceable order insofar as it did not relate to Plaintiff's official duties and interfered with his private rights and personal affairs. Plaintiff draws an analogy between this order and an order from a military superior officer to a subordinate and argues that such an order would not be enforceable in a military context. This argument is inapposite. Here, the relevant issue is not whether the order is enforceable, but whether it is "a lie" or a "phony reason" which serves as a cover for a discriminatory motive to terminate plaintiff. Kothe, 461 F. Supp. 2d at 474. Plaintiff has offered no compelling facts to suggest that Sheriff Allen issued the order (or the suspension with pay) as a pretext to terminate Plaintiff. As a deputy sheriff, Plaintiff was an at-will employee who could be terminated on any grounds short of discrimination or other unlawful bases such as retaliation.

9

Whether the grounds chosen by Defendant were communicated effectively to Plaintiff or were enforceable on their own terms is beyond the scope of this Court; the sole concern is whether they evince a discriminatory motive. Here, the Court finds no compelling evidence to suggest that Defendant was using the arrest, suspension and order as cover to terminate plaintiff because of his disability.

The extent of evidence brought by Plaintiff alleging a discriminatory motive is limited to: (1) that Defendant knew of Plaintiff's medical condition; and (2) that Defendant made certain statements to suggest that Plaintiff's medical condition might bring adverse consequences. However, Plaintiff provides no evidence to suggest a plausible link between the statements alleged and his termination. Indeed, the temporal sequence of events–where Defendant takes no adverse action for a month following discovery of Plaintiff's condition–strongly favors the Defendant's account. Furthermore, Plaintiff provides no evidence that Defendant was seeking to avoid incurring medical costs or to replace him with a person who did not suffer from such disability. In contrast, the Defendant argues convincingly that Plaintiff's potential medical costs could not have been a factor in his decision to terminate Plaintiff because "[t]he County provides the health insurance for deputies. The cost of his medical care would have no effect on my budget, nor would I know the amounts of expenses." (Doc. No. 17-4 at 3). Likewise, Plaintiff offers no compelling evidence to suggest that Defendant was making preparations to terminate him prior to the dispute with his wife.

On balance, these facts are not sufficient to suggest that Defendant's articulation of a legitimate, non-discriminatory reason for Plaintiff's termination was unworthy of credence. The record, taken as a whole, could not lead a rational trier of fact in this case to find for the non moving party and there is no genuine issue for trial.

E. <u>North Carolina Wrongful Discharge Claim</u>

N.C. Stat. Gen § 143-422.2 prohibits "discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees." For the reasons discussed above, this Court finds no genuine issue of material fact and is not convinced that a reasonable jury could return a verdict for Plaintiff based on the facts submitted to this Court.

Defendants' Motion for Summary Judgment is **GRANTED**.

## IV. CONCLUSION

Plaintiff's discrimination claim and wrongful discharge claim must be **DISMISSED** because the Defendants were able to articulate a legitimate, non-discriminatory reason and Plaintiff failed to show that such reason was a pretext for unlawful discrimination.

**IT IS, THEREFORE, ORDERED** that Defendants' Motion for Summary Judgment, (Doc. No. 17), is **GRANTED** and Plaintiff's Complaint (Doc. No. 1-3), is **DISMISSED** with prejudice. The Clerk is directed to close this case.

Signed: November 27, 2012

Robert J. Conrad, Jr.
Chief United States District Judge